UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
CAROLE BALKE,

             Plaintiff,

   -against-

ALLIANCE ONE RECEIVABLES MANAGEMENT, INC.,

            Defendant.
----------------------------------------------------------------------x

**Memorandum of Decision & Order**
16-cv-5624(ADS)(AKT)

<u>APPEARANCES</u>:

**Barshay Sanders, PLLC**
*Attorneys for the Plaintiff*
100 Garden City Plaza, Suite 500
Garden City, NY 11530
    By:   David M. Barshay, Esq.
            Craig B. Sanders, Esq., Of Counsel

**Gordon & Rees LLP**
*Attorneys for the Defendant*
90 Broad Street, 23rd Floor
New York, NY 10004
    By:   Ronald A. Giller, Esq. Of Counsel

**SPATT, District Judge:**

On October 7, 2016, the Plaintiff Carole Balke commenced this action against the Defendant Alliance One Receivables Management, Inc., alleging that a debt collection letter sent by the Defendant to the Plaintiff violated the provisions of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

Presently before the Court is a motion by the Defendant seeking to dismiss the complaint under Federal Rule of Civil Procedure ("FED. R. CIV. P.") 12(b)(1), on the ground that the Plaintiff lacks Article III standing. Alternatively, the Defendant moves under FED. R. CIV. P. 12(b)(6) to dismiss the complaint for failing to state a plausible claim for relief.

Also before the Court is a cross-motion by the Plaintiff, seeking leave to amend the complaint under FED. R. CIV. P. 15(a).

1

For the reasons that follow, the Defendant's motion to dismiss is denied in its entirety, and the Plaintiff's cross-motion to amend is granted.

## I. BACKGROUND

On an unspecified date, through TD Bank USA, N.A., the Plaintiff obtained a credit card account at Target retail stores. Using her Target credit card, the Plaintiff accrued an alleged debt and then defaulted on the required monthly payments. Her account was subsequently transferred to the Defendant, a debt collector, for collection.

On or about December 7, 2015, the Defendant contacted the Plaintiff by letter (the "Collection Letter"), which forms the basis of this action.

## II. DISCUSSION

### A. The Plaintiff's Standing

Before turning to the sufficiency of the complaint, the Court first addresses whether the Plaintiff has standing to maintain this action.

#### 1. The Standard under FED. R. CIV. P. 12(b)(1)

" 'A motion to dismiss for lack of subject-matter jurisdiction under [FED. R. CIV. P.] 12(b)(1) is the appropriate mechanism for challenging a plaintiff's constitutional standing to bring a particular claim.' " *Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 385 (E.D.N.Y. 2014) (Spatt, J.) (quoting *Ali v. NYC DOT*, Nos. 14-cv-312 & 14-cv-313, 2014 U.S. Dist. LEXIS 158331, at *2 (E.D.N.Y. Nov. 4, 2014)). Although this is the Defendant's motion, the burden is on the Plaintiff, as the party seeking to invoke the Court's jurisdiction, to establish that she has standing, and by extension, that subject matter jurisdiction exists. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

"Pursuant to Article III, § 2 of the United States Constitution, the jurisdiction of the federal courts is limited to 'Cases' and 'Controversies,' which 'restricts the authority of the federal courts to

resolving 'the legal rights of litigants in actual controversies.'" *Lary v. Rexall Sundown, Inc.*, 74 F. Supp. 3d 540, 543-44 (E.D.N.Y. 2015) (quoting *Genesis Healthcare Corp. v. Symczyk*, __ U.S. __, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013)) (quoting, in turn, *Valley Force Christian Coll. v. Arms United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982)).

Thus, "[s]tanding to sue, in the Constitutional sense, 'is the showing by a plaintiff that his particular grievance meets this standard, the 'essence of which is the presence of 'injury in fact' suffered by the plaintiff as a result of the defendant's actions.'" *Brady v. Basic Research, LLC*, 101 F. Supp. 3d 217, 227 (E.D.N.Y. 2015) (quoting *Evans v. Hills*, 537 F.2d 571, 591 (2d Cir. 1975)); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (noting that an injury-in-fact is "[f]irst and foremost" among the elements of Article III standing).

In general, an injury-in-fact "must be concrete and particularized, and actual or imminent, not conjectural or hypothetical." *Elliott v. City of New York*, No. 06-cv-296, 2010 U.S. Dist. LEXIS 121334, at *31 (S.D.N.Y. Nov. 15, 2010) (citing *Lujan*, 504 U.S. at 560). These are constitutional requirements, which may not be abrogated or limited by Act of Congress. *See Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547-48, 194 L. Ed. 2d 635 (2016) (citations omitted).

2. Application to the Facts of this Case

In this case, the Defendant contends that the Plaintiff has not plausibly alleged that she suffered an injury-in-fact sufficient to confer Article III standing. Rather, the Defendant argues that the Plaintiff has alleged bare procedural violations under the FDCPA, without any factual allegations to support a reasonable inference that she suffered a concrete harm.

For this proposition, she relies on *Spokeo*, *supra*, in which the Supreme Court recognized that, although "Congress has the [legislative] power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before," *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring)), a plaintiff does not "automatically

satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," *id.* Rather, in order to have standing to enforce a statutory right, a plaintiff must nevertheless establish that she suffered an injury that was both concrete and particular. *See id.*

However, the Defendant's argument is effectively foreclosed by the Second Circuit's recent decision in *Papetti v. Doe*, 2017 U.S. App. LEXIS 9165 (2d Cir. May 26, 2017) (Summary Order), in which the court characterized the same argument being advanced by the Defendant as a "misinterpret[ation]" of *Spokeo*:

> As we observed in *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016), *Spokeo* does not "categorically . . . preclude[ ] violations of statutorily mandated procedures from qualifying as concrete injuries." Rather, "some violations of statutorily mandated procedures may entail the concrete injury necessary for standing." *Id.* In order "to determine whether a procedural violation manifests injury in fact, a court properly considers whether Congress conferred the procedural right in order to protect an individual's concrete interests." *Id.*

*Papetti*, 2017 U.S. App. LEXIS 9165, at *3-*4.

Applying these standards, the Second Circuit held that § 1692e and § 1692g of the FDCPA – namely, the same provisions upon which the Plaintiff's complaint in this case is premised – indisputably "protect an individual's concrete interests," so that an alleged violation of those provisions satisfies the injury-in-fact requirement of Article III. *Id.* at *4.

Although mindful that Summary Orders of the Second Circuit lack precedential effect, *see Aguas Lenders Recovery Grp. LLC v. Suez, S.A.*, 585 F.3d 696, 702 n.4 (2d Cir. 2009), the Court is nevertheless persuaded by the court's reasoning in *Papetti*, which is apparently dispositive on this issue and finds substantial support in the body of post-*Spokeo* district court cases in this Circuit. *See, e.g., Winehouse v. GC Servs. Ltd. P'ship*, No. 16-cv-3110, 2017 U.S. Dist. LEXIS 86791, at *4 (E.D.N.Y. June 6, 2017) (finding that standing could be premised on a violation of the informational rights embodied in sections 1692d and 1692e of the FDCPA); *Guerrero v. GC Servs. Ltd. P'ship*, No. 15-cv-7449, 2017 U.S.

Dist. LEXIS 42884, at *29, *33 (E.D.N.Y. Mar. 23, 2017) (finding an argument substantially similar to the Defendant's argument in this case to be "misplaced," and concluding that Article III standing can be premised on alleged violations of § 1692e and § 1692g, which confer substantive rights); *accord Garcia v. Law Offices Howard Lee Schiff, P.C.*, No. 16-cv-791, 2017 U.S .Dist. LEXIS 48071, at *9-*10 (D. Conn. Mar. 30, 2017); *Remington v. Fin. Recovery Servs.*, No. 16-cv-865, 2017 U.S. Dist. LEXIS 36637, at *5-*6 (D. Conn. Mar. 15, 2017); *Bautz v. ARS Nat'l Servs.*, No. 16-cv-768, 2016 U.S. Dist. LEXIS 178208, at *2-*3 (E.D.N.Y. Dec. 23, 2016).

Accordingly, the Court finds that the Plaintiff's alleged failure to plead facts showing an injury beyond the statutory violations themselves does not divest her of Constitutional standing to maintain this action. *See Spokeo*, 136 S. Ct. at 1549 (noting that "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified") (emphasis in original).

The Court notes that, originally, the Defendant also challenged the Plaintiff's standing on the alternative ground that she failed to properly include her FDCPA claim on the appropriate schedules in her March 2016 bankruptcy filing, and therefore, the present claims belong exclusively to her bankruptcy estate. However, it appears that the Defendant has since abandoned that argument.

Accordingly, to the extent that the Defendant seeks to dismiss the complaint under FED. R. CIV. P. 12(b)(1) on the ground that the Plaintiff lacks Article III standing, its motion for such relief is denied.

B.     The Sufficiency of the Complaint

The Court now turns to the Defendant's argument that the complaint fails to state a plausible claim for relief under the FDCPA.

1.     The Standard under FED. R. CIV. P. 12(b)(6)

Under Rule 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss, the complaint must plead

5

'enough facts to state a claim to relief that is plausible on its face,' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)." *Otis-Wisher v. Medtronic, Inc.*, 14-cv-3491, 2015 U.S. App. LEXIS 9565, at *2 (2d Cir. June 9, 2015).

2.  Threshold Issue: Whether the Motion to Dismiss is Moot

Before turning to the parties' substantive contentions, the Court will address whether the Defendant's motion to dismiss was rendered moot by the Plaintiff's request for leave to file an amended complaint.

"Rule 15(a) gives the Court extensive discretion to decide whether to grant leave to amend after the time for amendment as of course has passed." *Gentleman v. State Univ. of New York*, No. 16-cv-2012, 2016 U.S. Dist. LEXIS 161798, at *9 (E.D.N.Y. Nov. 21, 2016) (Spatt, J.) (citation omitted). "In general, such requests should be freely granted unless the proposed amendment would be futile." *Id.* (citing *Grullon v. City of New Haven*, 720 F.3d 133, 139-40 (2d Cir. 2013)).

Where, as here, the Plaintiff seeks to amend her complaint while a motion to dismiss is pending, the Court has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint. *See Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 338 (E.D.N.Y. 2014) (Spatt, J.).

In similar situations, the Court has repeatedly reasoned that, so long as the proposed amended complaint does not seek to add new parties, and the Defendant has had a sufficient opportunity to respond to the new version of the pleading, procedural efficiency favors construing the motion to dismiss as if it were directed at the proposed amended complaint. *See id.*; *see also Gentleman*, 2016 U.S. Dist. LEXIS 161798, at *9-*10; *Offor v. Mercy Med. Ctr.*, 167 F. Supp. 3d 414, 428

(E.D.N.Y. 2016) (Spatt, J.), *vacated in part on other grounds*, 2017 U.S. App. LEXIS 1013 (2d Cir. Jan. 20, 2017); *Wilson v. Southampton Hosp.*, 2015 U.S. Dist. LEXIS 116179, at *15-*16 (E.D.N.Y. Aug. 28, 2015) (Spatt, J.).

It is true, as the Plaintiff notes, that in a few cases, this Court has also found that the lack of any new *claims* in the proposed amended pleading militated in favor of considering the pending dismissal motion as directed toward that version of the pleading. *See Kilpakis v. JPMorgan Chase Fin. Co., LLC*, No. 16-cv-2690, 2017 U.S. Dist. LEXIS 4073, at *8 (E.D.N.Y. Jan. 10, 2017) (Spatt, J.); *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016) (Spatt, J.). However, to the extent that the Plaintiff reads these cases as reflecting a bright-line rule mandating the denial of a dismissal motion whenever a subsequent pleading asserts new claims, he misstates the law. Contrary to that position, the inclusion of new claims is not dispositive on this issue and does not *ipso facto* mean that the motion to dismiss must be denied as moot.

As it relates to this case, although the proposed amended complaint ("PAC") does add new causes of action under the FDCPA, the Plaintiff fails to adequately explain why this fact precludes consideration of the pending motion to dismiss. On the contrary, she asserts only that the new claims are "based on separate and distinct violative portions of Defendant's collection letter," and therefore, "it is neither efficient to consider Defendant's Motion to Dismiss on the merits, nor appropriate given the standard under Fed. R. Civ. P. Rule 15(a)." *See* Pl. Reply Memo of Law at 2.

However, the Court finds this reasoning to be unpersuasive. Rather, the Court concurs with the Defendant's assertion that the Plaintiff's "new claims" are really just variations of her original claims, in that all are grounded in the same statutory provisions and challenge the same one-page Collection Letter. Thus, in the Court's view, procedural economy is best served by considering the motion to dismiss at this juncture, rather than necessitating additional motion practice in the future.

Accordingly, in its discretion, the Court will consider the pending motion to dismiss as if it were directed at the PAC, so that if the PAC cannot survive Rule 12(b)(6) scrutiny, the Plaintiff's cross-motion to amend will be denied as futile.

3. Whether the Proposed Amended Complaint States a Plausible Claim for Relief

The PAC relates to three distinct portions of the Collection Letter, each of which will be discussed in detail below.

a. Statement of the Amount of the Debt

First, the Plaintiff challenges the following portion of the Collection Letter on the ground that it fails to adequately convey the amount of the debt:

> As of the date of this letter, you owe $10532.20. Your account balance may be periodically increased due to the addition of accrued interest or other changes if so provided in your agreement with your original creditor.

*See* PAC, Ex. "1."

The Plaintiff contends that this language violates § 1692g(a)(1), which requires debt collectors to inform consumers of the amount of the debt, and § 1692e, which prohibits the use of false, deceptive, or misleading representations in connection with the collection of a debt. According to the Plaintiff, the quoted language violates these provisions because it "fails to inform Plaintiff whether the amount listed is the actual amount of the debt due, what 'other charges' might apply, and it does not provide any information about the claimed 'accrued interest.' " *See* Def. Memo of Law at 5; *see generally* PAC ¶¶ 19-81.

In the Court's view, the Plaintiff has sufficiently alleged that this aspect of the Collection Letter supports a plausible claim for relief under the statute.

In *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 77 (2d Cir. 2016), the Second Circuit held that "a debt collector will not be subject to liability under Section 1692e for failing to disclose that the consumer's balance may increase due to interest and fees if the collection notice either accurately

8

informs the consumer that the amount of the debt stated in the letter will increase over time, or clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date."

Thus, the court reinstated claims challenging a collection letter which set forth the plaintiff's " 'current balance' but did not disclose that this balance was continuing to accrue interest or that, if plaintiffs failed to pay the debt within a certain amount of time, they would be charged a late fee." *Id.* at 74.

Subsequently, in *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 216 (2d Cir. 2017), the Second Circuit clarified its holding in *Avila* by explaining that a collection letter "is incomplete where . . . it omits information allowing the least sophisticated consumer to determine the minimum amount she owes at the time of the notice, what she will need to pay to resolve the debt at any given moment in the future, and an explanation of any fees and interest that will cause the balance to increase."

Thus, the court again reinstated claims challenging a collection letter that contained the following information:

> [A] Payoff Statement [which] was dated July 31, 2013, and indicated that it was valid through August 14, 2013. The Payoff Statement included a "Total Amount Due" of $205,261.79. Below the amount due, however, the statement added, in small print:
>> To provide you with the convenience of an extended "Statement Void After" date, the Total Amount Due may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to the "Statement Void After" date, but which are not yet due as of the date this Payoff Statement is issued. You will receive a refund if you pay the Total Amount Due and those anticipated fees, expenses, or payments have not been incurred.

*Id.* at 211.

The court found that this language did not adequately state the amount of the debt, as required under the FDCPA. In particular, the collection letter failed to specify what the "estimated fees, costs, [and] additional payments" were, thus precluding a determination of whether they were accurate. *See id.* at 216. In that regard, the court reasoned that the least sophisticated consumer may

not understand how the fees would be calculated; whether they could be disputed; or what provision of the underlying credit agreement gave rise to them.

Further, apparently in violation of the rule in *Avila*, the collection notice in *Carlin* did not "inform [ ] the consumer that the amount of the debt stated in the letter *will* increase over time." *Avila*, 817 F.3d at 77 (emphasis supplied). Rather, the letter stated only that the balance due "may include estimated fees and costs," without providing any "clarity as to whether new fees and costs are accruing or as to the basis for those fees and costs." *Carlin*, 852 F.3d at 217.

Guided by these precedents, the Court finds that a plausible basis exists in this case to conclude that the Collection Letter falls short of its obligations under the FDCPA.

Similar to *Carlin*, the Collection Letter in this case refers with vagueness to "accrued interest or other charges," without providing any information regarding the rate of interest; the nature of the "other charges"; how any such charges would be calculated; and what portion of the balance due, if any, reflects already-accrued interest and other charges. By failing to provide even the most basic level of specificity in this regard, the Court "cannot say whether those amounts are properly part of the amount of the debt," for purposes of section 1692g. *Carlin*, 852 F.3d at 216.

Further, as set forth in *Carlin*, without any clarifying details, the Collection Letter states only that these unspecified assessments *may* be added to the balance due, which the Court finds to be insufficient to "accurately inform[ ] the [Plaintiff] that the amount of the debt stated in the letter will increase over time." *Avila* 817 F.3d at 77; *see Carlin*, 852 F.3d at 217.

In this regard, the Court finds that the Defendant did not necessarily discharge its burden by referring the Plaintiff to the underlying credit card agreement with her original lender. As was true in *Carlin*, it is plausible, if not likely, that the least sophisticated consumer would not understand from this reference what provision of that agreement, if any, gives rise to the potential "accrued interest and other charges" described in the Collection Letter.

Nor, apparently, does the Collection Letter clearly state that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date, which would rescue it from liability under *Avila*.

In this regard, the Defendant relies on a separate portion of the letter, which states that "[p]ayment of $1925.00 by 12/28/2015 will bring your account current and will stop collections on the account." However, the Court does not share the Defendant's view that this language satisfies *Avila*, as a matter of law. Rather, the Court finds that a reasonable reading of this provision would inform the Plaintiff only that $1,925 is the minimum payment required to bring the past-due account up to date; not that paying that amount would satisfy the total outstanding balance. Even assuming that the Defendant's construction is the correct one, *Avila* mandates that this information be provided "clearly." Here, at best, a factual dispute exists as to whether the least sophisticated consumer reading this portion of the Collection Letter would be left uncertain or confused about her rights.

Accordingly, the Court finds that the PAC states a plausible claim for relief under sections 1692g(a)(1) and 1692e of the FDCPA, on that ground that the Collection Letter failed to adequately convey the amount of the debt. To the extent that the Defendant seeks to dismiss Count I of the complaint, its motion for such relief is denied.

    b.    Notice of Right to Dispute the Debt

Second, the Plaintiff challenges the following portions of the Collection Letter:

> Our client, TD Bank USA, N.A., has referred your Target Credit Card to our office. All further communication should be directed to this office. Any correspondence for this account should be mailed to 4850 Street Rd. Suite 300, Trevose, PA 19053.
>
>     \*    \*    \*
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. . . .

*Id.*

The Plaintiff contends that these provisions violate § 1692g(a)(3), which requires debt collectors to inform consumers of their right to dispute the debt within 30 days of receiving the notice, and § 1692e, which, as noted above, prohibits the use of false, deceptive, or misleading representations in connection with the collection of a debt.

Although the Plaintiff does not dispute that the second quoted paragraph tracks the language of, and thus complies with § 1692g(a)(3), she contends that this statutory notice is impermissibly overshadowed and/or contradicted by the language in the first quoted paragraph. In this regard, the Plaintiff correctly notes that consumers are not required to dispute an alleged debt in writing. Thus, by advising the consumer that any correspondence for this account should be sent to the listed mailing address, it wrongly implies that disputes must be made in writing, and may lead the least sophisticated consumer to believe she has that obligation. *See generally* PAC ¶¶ 82-112.

In the Court's view, the Plaintiff has again sufficiently alleged that this aspect of the Collection Letter supports a plausible claim for relief under the statute.

It is undisputed that the Second Circuit has prohibited debt collectors from stating, directly or indirectly, that consumers may only enforce their right to dispute an alleged debt in writing. *See Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013).

Thus, even where, as here, a collection letter contains the language mandated by § 1692g(a)(3), "if the debt collector includes other language that overshadows or contradicts the validation notice to the extent that it renders the notice ineffective, the debt collector violates § 1692g as a matter of law." *Vega v. Credit Bureau Enters.*, No. 02-cv-1550, 2005 U.S. Dist. LEXIS 4927, at *19 (E.D.N.Y. Mar. 29, 2005).

For example, in *Vetrano v. CBE Grp., Inc.*, No. 15-cv-3185, 2016 U.S. Dist. LEXIS 100396 (E.D.N.Y. Aug. 1, 2016), which this Court finds to be persuasive, United States Magistrate Judge A. Kathleen Tomlinson found it plausible that the phrase "Forward written disputes to: Po Box 2635,

Waterloo IA 50704-2635" overshadowed and/or contradicted otherwise valid language informing the plaintiff of her right to dispute the alleged debt in ways other than in writing.

In this regard, Judge Tomlinson reasoned that:

It is true that the phrase "Forward written disputes to: Po Box 2635, Waterloo IA 50704-2635" does not explicitly state that a consumer may only submit disputes in writing. However, that is not the end of the issue. Directly below this phrase is the validation notice which begins with the language "[u]nless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid." In reading these phrases together, it is apparent that they are susceptible to alternative interpretations when viewed from the perspective of the least sophisticated consumer. Specifically, when read together, these phrases could mean (1) that written disputes are to be forwarded to the address listed in the letter and that in the event the consumer seeks to dispute the debt, he or she may do so by notifying the debt collector within thirty days of receiving the notice; or (2) that in order to dispute the debt the consumer is required to submit a "written dispute" to the address indicated within thirty days from receipt of the collection letter. Because the language "written disputes" as used in the challenged phrase has the potential to overshadow or contradict the information contained within the Section 1692g notice and thereby confuse or mislead the least sophisticated consumer into erroneously believing that a dispute must be in writing, the Plaintiff has stated a valid cause of action under this theory of recovery. Put another way, the Court at this juncture cannot say that, as a matter of law, the phrase "Forward written disputes to: Po Box 2635, Waterloo IA 50704-2635" as written and when read in conjunction with the first sentence of the validation notice did not violate the FDCPA when viewed from the perspective of the least sophisticated consumer.

*Id.*, at *26-*28 (internal record cites omitted).

In the Court's view, Judge Tomlinson's analysis in *Vetrano* applies to the facts of this case.

Namely, the Court finds that, although the Collection Letter did not explicitly state that the Plaintiff could only dispute the debt in writing, from the perspective of the least sophisticated consumer, the inclusion of a mailing address to which "all correspondence for this account should be mailed" introduces enough uncertainty regarding the permissible methods of disputing the debt to state a plausible claim for relief under the statute.

The Court is not persuaded by the Defendant's assertion that this confusion was alleviated, as a matter of law, by other statements in the Collection Letter containing a telephone number, such as: "If you are experiencing financial difficulties, call our office (866-672-3286) and a representative will assist you in negotiating a suitable arrangement."

In the Court's view, the letter's references to a method of communicating other than by written correspondence fail to conclusively refute the Plaintiff's claim. Rather, at best, these apparently conflicting provisions again create an issue of fact as to whether the Collection Letter, viewed as a whole, would be likely to mislead the least sophisticated consumer in the manner alleged by the Plaintiff. At this stage, it is sufficient for the Court to conclude that this question may plausibly be answered in the affirmative.

Accordingly, the Court finds that the PAC states a cognizable claim for relief under sections 1692g(a)(3) and 1692e of the FDCPA, on that ground that the statutorily-required notice regarding a consumer's right to dispute the debt was overshadowed and/or contradicted by language directing that all relevant correspondence be mailed to the address provided. To the extent that the Defendant seeks to dismiss Count II of the complaint, its motion for such relief is denied.

  c.  Notice of Right to Dispute, Alternative Argument

Finally, the Plaintiff challenges the following portions of the Collection Letter:

Payment of $1925.00 by 12/28/2015 will bring your account current and will stop collections on the account.

         *  *  *

Please note that providing the options in the preceding paragraph does not affect or diminish your rights as stated below, including your right to dispute the validity of all or any portion of the debt and to request information about the original creditor. PLEASE READ CAREFULLY ALL OF THE IMPORTANT DISCLOSURES PROVIDED BELOW.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

*Id.*

In this regard, the Plaintiff notes that subsections (4) and (5) of section 1692g(a) of the FDCPA permit consumers a 30-day window within which to request, in writing, verification of an alleged debt and/or the name and address of the original creditor. Those provisions also require debt

collectors to notify consumers of these rights in their initial communication regarding an alleged debt.

Thus, the Plaintiff alleges that, since the Collection Letter in this case was dated December 7, 2015, she was statutorily entitled to a period of 30 days, until January 6, 2016, to dispute or request verification of the debt. Again the Plaintiff does not deny that the Collection Letter informed her of these rights. Rather, she alleges that the relevant disclosure was overshadowed and/or contradicted by the portion of the Collection Letter which stated that "Payment of $1925.00 by 12/28/2015 will bring your account current and will stop collections on the account."

In this regard, the Plaintiff contends that the quoted language constitutes a demand for payment, which would make the least sophisticated consumer confused or uncertain as to whether she needed to pay the listed amount by December 28, 2015, or whether she was entitled to the full 30 days, until January 6, 2016, to dispute or request verification of the alleged debt.

Alternatively, the Plaintiff notes that, under section 1692g(b), once the consumer does request verification of the debt, the debt collector is required by law to cease collection activities until such verification is provided to the consumer. However, by stating that "Payment of $1925.00 by 12/28/2015 . . . will stop collections on the account," the Collection Letter could be interpreted to imply that the *only* way to stop collection efforts is by paying the amount listed, and may lead the least sophisticated consumer to believe that. *See generally* PAC ¶¶ 113-157.

Again the Court finds that the Plaintiff has sufficiently alleged that this aspect of the Collection Letter supports a plausible claim for relief under the statute.

For substantially the same reasons as outlined above, the Court cannot say, as a matter of law, that the least sophisticated consumer would not be confused or misled into erroneously believing that her time to dispute or otherwise request verification of the debt expired on the date on which the Collection Letter stated that payment was due. Similarly, the Court finds it plausible that the least sophisticated consumer might read the challenged language as indicating that the only

way to cease collection activities is to make the requested minimum payment. Indeed, although the statutory text makes it clear that submitting a written request for verification will halt collection activities, this information is not conveyed anywhere in the letter. Thus, the only information provided to the Plaintiff regarding the ways in which she could have ceased the Defendant's collection efforts came in the form of a demand for payment. In the Court's view, this plausibly states a violation of the statute.

The Defendant's argument is again premised on the theory that the challenged language constitutes a discounted settlement offer, which the creditor would have accepted in full satisfaction of the debt. However, as discussed above, the Court finds no merit in this interpretation.

In the Court's view, the portion of the Collection Letter stating that "[p]ayment of $1925.00 by 12/28/2015 will bring your account current and will stop collections on the account," serves only to inform the Plaintiff that a minimum payment of $1,925 will bring the past-due account up to date; *not* that the creditor will accept that sum in full satisfaction of the debt.

In fact, in a separate portion of the letter, it explicitly states that, in lieu of making the $1,925 minimum payment, the Plaintiff could simply "mail the balance in full" to the creditor. In the Court's view, it is objectively unreasonable to read the Collection Letter as simultaneously offering two grossly disparate methods of satisfying the same debt: (1) remitting the approximately $10,000 balance in full; or (2) paying $1,925 – an amount discounted by more than 80%.

The cases relied upon by the Defendant further illustrate that the challenged language is not a discounted settlement offer. For example, in *Soffer v. Nationwide Recovery Sys.*, No. 06-cv-435, 2007 U.S. Dist. LEXIS 28979, at *2 (E.D.N.Y. Apr. 18, 2007), the collection letter stated that the debt collector was authorized to offer the plaintiff the "opportunity to settle your account for a lump sum payment." Similarly, in *Omogbeme v. Risk Mgmt. Alternatives, Inc.*, No. 01-cv-7571, 2003 U.S. Dist. LEXIS 25781, at *2 (E.D.N.Y. Aug. 4, 2003), the collection letter stated that the creditor "would like to offer you a settlement." And in *Harrison v. NBD Inc.*, 968 F. Supp. 837, 846 (E.D.N.Y. 1997) (Spatt, J.), the

collection letter stated that the debt collector was "extending to you this one time opportunity to pay a discounted amount and clear your credit record with" the original creditor.

In this case, it is clear that the the Collection Letter conveyed no comparable language.

Accordingly, the Court finds that the PAC states a cognizable claim for relief under sections 1692g(a)(4)-(5), 1692g(b), and 1692e of the FDCPA, on the ground that the statutorily-required notice regarding a consumer's right to request verification of the debt was overshadowed and/or contradicted by language requesting that a minimum payment be submitted within the 30-day verification period in order to cease collection activities. To the extent that the Defendant seeks to dismiss Count III of the complaint, its motion for such relief is denied.

### III. CONCLUSION

Based on the foregoing, the Defendant's motion to dismiss the complaint, DE [6], is denied in its entirety. Further, the Plaintiff's cross-motion, DE [11], for leave to file the proposed amended complaint is granted.

The Plaintiff is directed to file the amended complaint on ECF within five days of the date of this Order. The Defendant's response will be due in the ordinary course.

It is **SO ORDERED:**

Dated: Central Islip, New York
June 19, 2017

/s/ *Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge